# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

KAREN GEORGINA FOSTER, a/k/a KAREN MARTINEZ,

Plaintiff,

-against-

VANCE & HUFFMAN, LLC, ACCELERATED PORTFOLIO, INC., EXPERIAN INFORMATION SOLUTIONS, INC., and AMERICAN EXPRESS NATIONAL BANK,

Defendants.

Index No. ______________

**SUMMONS**

Date Index No. Purchased: ______

---

**TO THE ABOVE-NAMED DEFENDANTS:**

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York.

In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue designated is New York County, pursuant to CPLR 503(a), in that a substantial part of the events giving rise to the claims asserted in the complaint occurred in New York County.

Dated: New York, New York
June 9, 2026

THE LAW OFFICE OF
ELLIOT M. ELO, ESQ. PLLC
By:s/ Elliot M. Elo
Elliot M. Elo, Esq.
42 West 48th Street, Floor 2
New York, New York 10036-1701
Telephone: (212) 302-1257
Facsimile: (212) 302-1648
Email: elliot@elolawfirm.com
*Attorney for Plaintiff*

**DEFENDANTS' NAMES AND ADDRESSES FOR SERVICE:**

**Vance & Huffman, LLC**
c/o Secretary of State of the State of New York, as agent, and
55 Monette Pkwy, Suite 100, Smithfield, Virginia 23430

**Accelerated Portfolio, Inc.**
c/o Secretary of State of the State of New York, as agent, and
39 Monette Parkway, Smithfield, Virginia 23430

**Experian Information Solutions, Inc.**
c/o C T Corporation System, registered agent
28 Liberty Street, New York, New York 10005

**American Express National Bank**
115 West Towne Ridge Parkway, Sandy, Utah 84070

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---------------------------------------------------------------------

KAREN GEORGINA FOSTER, a/k/a KAREN MARTINEZ,

Plaintiff,

-against-

VANCE AND HUFFMAN, LLC, ACCELERATED PORTFOLIO, INC., EXPERIAN INFORMATION SOLUTIONS, INC., and AMERICAN EXPRESS NATIONAL BANK,

Defendants.

---------------------------------------------------------------------

Index No. _______________

**VERIFIED COMPLAINT**

**Jury Trial Demanded**

Plaintiff KAREN GEORGINA FOSTER, also known in the records of Defendant Vance and Huffman, LLC and on her consumer file as KAREN MARTINEZ ("Plaintiff" or "Ms. Foster"), by and through her attorney, Elliot M. Elo, Esq., of The Law Office of Elliot M. Elo, Esq. PLLC, alleges as follows upon knowledge as to herself and her own acts, and upon information and belief as to all other matters:

**PRELIMINARY STATEMENT**

1. This is a consumer protection action arising from the unlawful practice of debt parking.

2. Defendant Vance and Huffman, LLC ("Vance and Huffman") is a debt collector that collects for Defendant Accelerated Portfolio, Inc. ("Accelerated Portfolio"), the debt buyer that owns the alleged debt at issue.

3. Vance and Huffman furnished a derogatory collection account concerning Plaintiff to Defendant Experian Information Solutions, Inc. ("Experian"), a consumer reporting agency, before Vance and Huffman ever communicated with Plaintiff about the alleged debt.

4. Vance and Huffman furnished that collection account before providing Plaintiff the validation information required by law.

5. Plaintiff's Experian consumer file disclosure dated April 15, 2026 reflected a FICO Score 8 of 547, in the "Poor" range.

6. That April 15, 2026 Experian consumer file disclosure reflected the collection account at issue in this action.

7. Vance and Huffman did not send its first communication to Plaintiff about the alleged debt until April 18, 2026, which was three days after the April 15, 2026 Experian consumer file disclosure already reflected the collection account.

8. In that April 18, 2026 communication, Vance and Huffman admitted in writing that the account "has been added to your credit report as a collection account."

9. Plaintiff served a debt parking dispute letter that Vance and Huffman received on May 1, 2026.

10. After Vance and Huffman received that dispute letter, the collection account continued to be reported. Upon information and belief, the account was later updated to include a consumer-dispute notation, but the collection account nevertheless remained on Plaintiff's Experian consumer file and continued to convey the materially misleading impression described herein.

11. The conduct of Vance and Huffman and Accelerated Portfolio violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (the "FDCPA").

12. That conduct included violations of the debt parking prohibition of Regulation F, 12 C.F.R. § 1006.30(a), and the validation requirements of 12 C.F.R. § 1006.34 and 15 U.S.C. § 1692g(a).

13. That conduct also constituted a deceptive act or practice under New York General Business Law § 349.

14. Experian failed to follow reasonable procedures to assure the maximum possible accuracy of the information it reported about Plaintiff, in violation of 15 U.S.C. § 1681e(b).

15. On June 7, 2026, Defendant American Express National Bank declined Plaintiff's application for a Platinum Card.

16. Plaintiff seeks against American Express National Bank a declaratory judgment, brought solely under 28 U.S.C. § 2201 and CPLR § 3001 and expressly not under the Fair Credit Reporting Act, resolving the controversy described below concerning that adverse action.

17. The transaction underlying the alleged debt is governed by an arbitration agreement that binds Plaintiff, Vance and Huffman, and Accelerated Portfolio, but does not bind Experian or American Express National Bank, neither of which is a party to it.

18. Plaintiff does not presently elect arbitration and files this action in this Court. Plaintiff acknowledges the existence of the Arbitration Agreement and alleges that any contractual right to compel arbitration belongs to the parties entitled to invoke that agreement. Plaintiff is prepared to arbitrate if a party properly entitled to invoke the Arbitration Agreement timely elects to do so and has not waived that right. Because the claims against Experian and American Express National Bank are not subject to arbitration, judicial resolution in a single forum is presently the most efficient course unless and until arbitration is properly invoked.

## PARTIES

***Plaintiff***

19. Plaintiff is a natural person and a "consumer" within the meaning of 15 U.S.C. § 1692a(3) and 15 U.S.C. § 1681a(c).

20. Plaintiff is identified in the records of Vance and Huffman and on her Experian consumer file as Karen Martinez, which is her former married name, and is also known as Karen Georgina Foster, which is her current and maiden name.

21. The alleged obligation at issue arises from a CreditFresh line of credit extended for personal, family, or household purposes, and is therefore a "debt" within the meaning of 15 U.S.C. § 1692a(5).

***Defendant Vance and Huffman, LLC***

22. Defendant Vance and Huffman, LLC is a foreign limited liability company organized under the laws of the Commonwealth of Virginia.

23. Vance and Huffman maintains a principal place of business at 55 Monette Pkwy, Suite 100, Smithfield, Virginia 23430.

24. Vance and Huffman is registered with the New York Department of State, Division of Corporations, as a foreign limited liability company under DOS ID number 4513418.

25. Vance and Huffman's entity status with the New York Department of State is active.

26. Vance and Huffman's foreign formation date was October 30, 2013.

27. Vance and Huffman's date of initial New York Department of State filing was January 14, 2014.

28. Vance and Huffman is designated in the records of the New York Department of State as having Albany County as its New York county.

29. Vance and Huffman has appointed the New York Secretary of State as its agent upon whom process against it may be served.

30. Electronic service of process on the New York Secretary of State as agent for Vance and Huffman is not permitted, according to the records of the New York Department of State.

31. Vance and Huffman uses instrumentalities of interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

32. Vance and Huffman regularly collects or attempts to collect debts asserted to be owed or due to another.

33. Vance and Huffman is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

34. Vance and Huffman identifies itself as a debt collector in each of its communications to Plaintiff that are described in this Complaint.

35. Vance and Huffman identifies itself as a debt collector on its public website.

36. Upon information and belief, Joshua Tawes is a principal, officer, or managing member of Vance and Huffman, and Plaintiff's debt parking dispute letter was addressed to Joshua Tawes as the chief executive officer or member manager of Vance and Huffman.

***Defendant Accelerated Portfolio, Inc.***

37. Defendant Accelerated Portfolio, Inc. is a foreign business corporation organized under the laws of the State of Delaware.

38. Accelerated Portfolio's foreign formation date was November 30, 2010.

39. Accelerated Portfolio maintains its principal executive office at 39 Monette Pkwy, Smithfield, Virginia 23430.

40. Accelerated Portfolio's principal executive office at 39 Monette Pkwy is located in the same Monette Parkway office complex in Smithfield, Virginia as the principal place of business of Vance and Huffman at 55 Monette Pkwy.

41. Accelerated Portfolio is registered with the New York Department of State, Division of Corporations, as a foreign business corporation under DOS ID number 6204526.

42. Accelerated Portfolio's entity status with the New York Department of State is active.

43. Accelerated Portfolio's date of initial New York Department of State filing was June 22, 2021.

44. Accelerated Portfolio is designated in the records of the New York Department of State as having Albany County as its New York county.

45. Accelerated Portfolio has appointed the New York Secretary of State as its agent upon whom process against it may be served, with process to be mailed to 39 Monette Parkway, Smithfield, Virginia 23430.

46. Electronic service of process on the New York Secretary of State as agent for Accelerated Portfolio is not permitted, according to the records of the New York Department of State.

47. The records of the New York Department of State identify Joshua Tawes as the chief executive officer of Accelerated Portfolio.

48. The records of the New York Department of State identify the address of Joshua Tawes, as chief executive officer of Accelerated Portfolio, as 39 Monette Pkwy, Smithfield, Virginia 23430.

49. Because Joshua Tawes is identified as the chief executive officer of Accelerated Portfolio and was addressed as the chief executive officer or member manager of Vance and Huffman, and because Accelerated Portfolio and Vance and Huffman share the same Monette Parkway office complex, upon information and belief Accelerated Portfolio and Vance and Huffman are under common control.

50. Upon information and belief, Accelerated Portfolio and Vance and Huffman operate as an integrated debt collection enterprise.

51. Accelerated Portfolio is a debt buyer that purchases distressed consumer receivables.

52. Accelerated Portfolio is the current creditor of the alleged debt at issue.

53. Accelerated Portfolio placed the alleged debt with Vance and Huffman for collection.

54. Upon information and belief, Accelerated Portfolio is licensed as a debt collection agency by the New York City Department of Consumer and Worker Protection and conducts debt collection business in New York.

55. Because Accelerated Portfolio acquired the alleged debt after it was in default, and because Accelerated Portfolio's business includes the collection of acquired consumer debts, Accelerated Portfolio is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

56. Accelerated Portfolio is liable for the collection conduct undertaken on its behalf by its agent Vance and Huffman.

***Defendant Experian Information Solutions, Inc.***

57. Defendant Experian Information Solutions, Inc. is a foreign business corporation organized under the laws of the State of Ohio.

58. Experian's foreign formation date was February 18, 1992.

59. Experian maintains its principal executive office at 475 Anton Boulevard, Costa Mesa, California 92626.

60. Experian is registered with the New York Department of State, Division of Corporations, as a foreign business corporation under DOS ID number 2076147.

61. Experian's entity status with the New York Department of State is active.

62. Experian's date of initial New York Department of State filing was October 18, 1996.

63. Experian has been continuously registered to do business in New York for approximately thirty years.

64. Experian is designated in the records of the New York Department of State as having Albany County as its New York county.

65. Experian has appointed C T Corporation System as its registered agent in New York.

66. Experian's registered agent, C T Corporation System, is located at 28 Liberty Street, New York, New York 10005, which is in New York County.

67. Experian is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f).

68. Experian regularly assembles and evaluates consumer credit information for the purpose of furnishing consumer reports to third parties.

69. Experian prepared the consumer file disclosure and consumer reports concerning Plaintiff that are at issue in this action, including the April 15, 2026 Experian consumer file disclosure.

***Defendant American Express National Bank***

70. Defendant American Express National Bank is a national banking association.

71. American Express National Bank is chartered by the Office of the Comptroller of the Currency under charter number 25151.

72. The primary federal regulator of American Express National Bank is the Office of the Comptroller of the Currency.

73. The secondary federal regulator of American Express National Bank is the Consumer Financial Protection Bureau.

74. American Express National Bank has been insured by the Federal Deposit Insurance Corporation since March 20, 1989, under FDIC certificate number 27471.

75. American Express National Bank is a member of the Federal Reserve System.

76. American Express National Bank maintains its corporate headquarters at 115 West Towne Ridge Parkway, Sandy, Utah 84070.

77. American Express National Bank is the issuer of the American Express Platinum Card for which Plaintiff applied.

78. American Express National Bank is named in this action solely as a defendant to the declaratory judgment count set forth below.

79. As set forth in that declaratory judgment count, no claim under the Fair Credit Reporting Act and no claim for monetary relief is asserted against American Express National Bank.

***Relationships Among the Defendants and Transactional Unity***

80. The Defendants are connected by a single course of dealing concerning one collection account.

81. Accelerated Portfolio acquired the alleged debt and placed it with its co-located collection agent Vance and Huffman.

82. Vance and Huffman parked the account by furnishing it to Experian before any lawful communication with Plaintiff and before validation.

83. Experian compiled and reported that account on Plaintiff's consumer file.

84. Upon information and belief, American Express National Bank obtained one or more consumer reports concerning Plaintiff, including a report furnished by Experian, and thereafter declined Plaintiff's application.

85. The right to relief against each Defendant therefore arises out of the same transaction, occurrence, and series of transactions and occurrences within the meaning of CPLR 1002 and, in the event of removal, Rule 20(a)(2) of the Federal Rules of Civil Procedure.

86. The action also presents questions of law and fact common to all Defendants, including the accuracy of the collection account and its causal effect on the adverse action taken on Plaintiff's American Express application.

## JURISDICTION AND VENUE

***A. Subject Matter Jurisdiction***

87. The state courts exercise concurrent jurisdiction over claims arising under the FDCPA pursuant to 15 U.S.C. § 1692k(d).

88. The state courts exercise concurrent jurisdiction over claims arising under the FCRA pursuant to 15 U.S.C. § 1681p.

89. This Court has subject matter jurisdiction over Plaintiff's claim under New York General Business Law § 349.

90. This Court has subject matter jurisdiction over Plaintiff's declaratory judgment claim pursuant to CPLR § 3001 and 28 U.S.C. § 2201.

***B. Personal Jurisdiction Over Vance and Huffman and Accelerated Portfolio***

91. This Court has personal jurisdiction over Vance and Huffman and over Accelerated Portfolio under CPLR 302(a)(1) because each transacts business within New York.

92. Vance and Huffman transacts business in New York in that it is registered with the New York Department of State, has appointed the New York Secretary of State as its agent for service, and, upon information and belief, regularly collects debts from consumers residing in New York.

93. Accelerated Portfolio transacts business in New York in that it is registered with the New York Department of State, has appointed the New York Secretary of State as its agent for service, and, upon information and belief, holds a debt collection agency license issued by the New York City Department of Consumer and Worker Protection and regularly collects debts from consumers residing in New York.

94. Plaintiff's claims against Vance and Huffman and Accelerated Portfolio bear a substantial relationship to that transaction of business because the debt parking and unlawful furnishing practices applied to Plaintiff are the same systematic collection and furnishing practices that these Defendants conduct in, and direct into, New York.

95. This Court also has personal jurisdiction over Vance and Huffman and Accelerated Portfolio under CPLR 302(a)(3)(i) and (ii) because each committed a tortious act outside New York, namely the unlawful parking and false furnishing of the collection account, that caused injury within New York.

96. That injury occurred within New York because the false collection account was introduced into the consumer reporting system and transmitted into New York, where it was received and relied upon by creditors that maintain consumer credit operations in New York.

97. Vance and Huffman and Accelerated Portfolio each regularly does and solicits business and engages in a persistent course of conduct in New York, derives substantial revenue from interstate commerce, and reasonably should have expected its furnishing into the nationwide consumer reporting system to have consequences in New York.

98. To the extent New York law recognizes consent-by-registration jurisdiction, Defendants' registrations further support the exercise of personal jurisdiction. Plaintiff does not rely exclusively upon registration but also upon Defendants' transaction of business and tortious conduct directed into New York.

***C. Personal Jurisdiction Over Experian***

99. This Court has personal jurisdiction over Experian under CPLR 302(a)(1) because Experian transacts substantial business within New York.

100. Experian transacts business in New York in that it has been registered with the New York Department of State for approximately thirty years and maintains a registered agent in New York County at 28 Liberty Street, New York, New York.

101. Experian further transacts business in New York in that it maintains contractual relationships with, and furnishes consumer file data to, financial institutions and other users located

in New York, processes consumer disputes originating in New York, and derives substantial revenue from its New York business.

102. Experian transmitted the inaccurate consumer file information at issue into New York for use by New York based credit operations in making credit decisions.

103. Plaintiff's FCRA claim against Experian arises directly from Experian's assembly, reporting, and transmission of Plaintiff's consumer file, including its transmission into New York.

***D. Personal Jurisdiction Over American Express National Bank***

104. This Court has personal jurisdiction over American Express National Bank under CPLR 302(a)(1) because American Express National Bank transacts substantial business within New York, including by extending consumer credit to New York residents.

105. Upon information and belief, the receipt and evaluation of Plaintiff's consumer report and the decision on Plaintiff's application were conducted, directed, or processed through American Express operations in New York County, and the declaratory controversy arises from and relates to that New York centered credit decisioning activity.

***E. Venue***

106. Venue is proper in New York County under CPLR 503(a) because a substantial part of the events giving rise to Plaintiff's claims occurred in New York County.

107. In particular, and upon information and belief, Experian transmitted Plaintiff's consumer file into New York, and the receipt, evaluation, and use of that file and the decision on Plaintiff's American Express application were conducted, directed, or processed through American Express operations in New York County.

108. Upon information and belief, witnesses, records, electronically stored information, underwriting records, adverse-action records, and consumer-report access records relating to the

American Express decision are located in, maintained in, accessible from, or directed through New York County, New York.

109. Upon information and belief, American Express maintains substantial operations, employees, contractors, agents, records, data systems, or decision-support functions within New York County that participated in, supported, or were connected with the receipt, evaluation, or use of Plaintiff's consumer report information.

110. American Express maintains major operations, underwriting functions, corporate offices, and consumer credit decisioning activities in New York County, New York.

***F. Forum Non Conveniens***

111. This action should be retained in New York under CPLR 327 because a substantial part of the relevant events occurred in New York, all Defendants conduct business in New York, the records and witnesses concerning the consumer report transmission and the American Express credit decision are located in New York, New York has a strong interest in regulating debt collection and consumer reporting conducted within the State, and Defendants will suffer no undue hardship in litigating here.

## THE ARBITRATION AGREEMENT

112. The CreditFresh Line of Credit Documents include an Arbitration Agreement and Jury Trial Waiver (the "Arbitration Agreement") governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq.

113. The Arbitration Agreement defines "Disputes" in the broadest possible terms and governs all disputes that arise out of or directly or indirectly relate to the Line of Credit Documents, including statutory and tort claims.

114. The Arbitration Agreement extends to the parties and to their heirs, successors, assigns, and third parties related to any Dispute.

115. Vance and Huffman, as the collector for the assignee Accelerated Portfolio, and Accelerated Portfolio, as the assignee of the CreditFresh obligation, are each within the scope of the Arbitration Agreement.

116. Experian is not a party to the Arbitration Agreement and is not bound by or entitled to invoke it.

117. American Express National Bank is not a party to the Arbitration Agreement and is not bound by or entitled to invoke it.

118. The claims against Experian and American Express National Bank are therefore not arbitrable and remain before this Court regardless of the disposition of the arbitrable claims.

119. The Arbitration Agreement provides that arbitration shall be administered by the American Arbitration Association ("AAA") or JAMS under their consumer rules.

120. The Arbitration Agreement provides that the hearing shall be held within thirty miles of the consumer's home.

121. The Arbitration Agreement provides that the creditor side will advance the consumer's arbitration fees upon request, including filing, administrative, hearing, and arbiter fees.

122. Plaintiff did not opt out of the Arbitration Agreement.

## FACTUAL ALLEGATIONS

***The Account Was Reported Before Any Communication With Plaintiff***

123. Upon information and belief, the alleged debt originated as a CreditFresh line of credit bearing original creditor account number 4124115.

124. Upon information and belief, the alleged debt was later acquired by Accelerated Portfolio.

125. The records of Vance and Huffman state that the account was placed with Vance and Huffman on March 7, 2026, which Vance and Huffman identified as the "Date Acquired."

126. Plaintiff's Experian consumer file disclosure dated April 15, 2026 reflected a FICO Score 8 of 547 for Plaintiff, in the "Poor" range.

127. That April 15, 2026 Experian consumer file disclosure reflected the collection account at issue.

128. No Defendant communicated with Plaintiff about the alleged debt before the collection account appeared on the April 15, 2026 Experian consumer file disclosure.

129. The first communication to Plaintiff about the alleged debt was on April 18, 2026, which was after the collection account already appeared on Plaintiff's Experian consumer file.

130. By furnishing the collection account to Experian, and causing it to be reported, before communicating with Plaintiff and before affording the validation period, Vance and Huffman and Accelerated Portfolio engaged in debt parking in violation of 12 C.F.R. § 1006.30(a).

131. The furnishing of the collection account before communication and validation was not merely a reporting event; it was an indirect means of collecting the alleged debt.

132. By causing the collection account to appear on Plaintiff's consumer file before communicating with Plaintiff, Vance and Huffman and Accelerated Portfolio created credit pressure designed to induce Plaintiff to pay, contact the collector, or resolve the account under the coercive threat of continuing credit harm.

133. That practice was unfair, unconscionable, deceptive, and misleading because it exploited the consumer reporting system as collection leverage before Plaintiff received the validation information and dispute rights required by law.

***The Communications Confirm the Parking and Were Coercive***

134. On April 18, 2026 at 11:42 a.m., Vance and Huffman sent Plaintiff an email bearing the subject line "Delinquent Account Added to Your Credit Report."

135. That April 18, 2026 email stated that the account "has been added to your credit report as a collection account."

136. That April 18, 2026 email stated a balance due of $4,465.13.

137. That April 18, 2026 email invited payment and represented that resolving the account may improve Plaintiff's credit profile over time.

138. On the same day, April 18, 2026, Vance and Huffman sent Plaintiff text messages stating that a delinquent account had been added to her credit report and directing her to Vance and Huffman's payment portal.

139. On April 20, 2026, Vance and Huffman sent Plaintiff a text message stating that it had a limited time to work with her before it would return the Credit Fresh account to its client.

140. That April 20, 2026 text message conveyed false urgency in order to induce payment.

141. The April 18, 2026 email and text messages, together with the April 20, 2026 text message, communicated to Plaintiff that the collection account had already damaged her consumer file and that she had only a limited time to work with Vance and Huffman before the account would be returned to its client.

142. An unsophisticated consumer receiving those communications after discovering a new collection account on her consumer file would understand the communications as pressure to act quickly to prevent further credit consequences.

143. The limited-time language was materially misleading because Vance and Huffman had already used credit reporting as collection leverage before communicating with Plaintiff and before providing the validation information required by law.

144. The communications therefore amplified the coercive effect of the debt parking by combining a reported collection account, payment solicitation, credit-profile pressure, and artificial urgency.

145. On April 25, 2026, Vance and Huffman sent Plaintiff an email identifying Accelerated Portfolio as the current creditor, bearing account number UT209145, and identifying Credit Fresh as the original creditor.

146. That April 25, 2026 email stated the amount owed as $4,465.13.

147. None of the communications described above provided the validation information required by 15 U.S.C. § 1692g(a) and 12 C.F.R. § 1006.34 within five days of the initial communication, including a statement of Plaintiff's right to dispute the debt and to obtain verification within thirty days.

148. The absence of required validation information was material because Plaintiff had already been confronted with a derogatory collection account on her consumer file before receiving any legally compliant notice identifying her rights.

149. Without a compliant validation notice, Plaintiff was deprived of the information necessary to evaluate the alleged debt, determine whether to dispute it, request verification, and prevent the reported collection account from continuing to damage her consumer file.

150. The violation was aggravated because the collector Defendants used the existence of the already-reported collection account to solicit payment while withholding the validation information and dispute-right disclosures that federal law required.

***Plaintiff Disputed and the Account Continued To Be Reported***

151. On April 27, 2026, Plaintiff executed a debt parking dispute letter addressed to Vance and Huffman.

152. That debt parking dispute letter was addressed to the attention of Joshua Tawes as the chief executive officer or member manager of Vance and Huffman.

153. That debt parking dispute letter disputed the alleged debt.

154. That debt parking dispute letter stated that Vance and Huffman had reported the debt to consumer reporting agencies without first communicating with Plaintiff and waiting a reasonable period as required by 12 C.F.R. § 1006.30(a).

155. That debt parking dispute letter asserted violations of 15 U.S.C. §§ 1692c(b), 1692e, 1692f, and 1692g(a).

156. That debt parking dispute letter offered to resolve the matter on stated terms, including a permanent cease and desist, deletion of the tradeline from all consumer reporting agencies, an agreement not to sell or assign the debt, and a payment to Plaintiff.

157. That debt parking dispute letter included an unsworn declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

158. That debt parking dispute letter was sent by United States Postal Service certified mail, return receipt requested, under tracking number 7021 2720 0003 3651 3949, and by email.

159. That debt parking dispute letter was delivered to Vance and Huffman's Smithfield, Virginia address on May 1, 2026 at 10:03 a.m., as confirmed by United States Postal Service tracking number 7021 2720 0003 3651 3949.

160. Delivery of that debt parking dispute letter placed Vance and Huffman on notice that Plaintiff disputed the alleged debt.

161. After delivery of that debt parking dispute letter, the collection account continued to be reported to one or more consumer reporting agencies.

162. After delivery of that debt parking dispute letter, the collection account continued to be reported. Upon information and belief, Experian later displayed a consumer-dispute notation stating "Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act)," but the account nevertheless remained reported as a collection account and continued to convey the materially misleading impression that the parked collection account was valid, properly reported, and properly maintained.

163. The later addition of a consumer-dispute notation did not cure the original debt parking, did not provide the validation notice that was required before credit reporting was used as collection leverage, did not disclose the complete account identifier, and did not correct the misleading impression created by reporting the account before lawful communication and validation.

164. The later addition of a consumer-dispute notation confirms that the dispute was received, processed, and acted upon, but it does not establish that the reporting was complete, accurate, lawful, or not materially misleading.

***Experian Reported the Parked Account***

165. Experian assembled and reported the parked collection account on Plaintiff's consumer file, including in the April 15, 2026 Experian consumer file disclosure.

166. The April 15, 2026 Experian consumer file disclosure identified the collection account using only the account number "UT2091XX."

167. The consumer file disclosure did not disclose the complete account number associated with the collection account.

168. The consumer file disclosure did not disclose whether "UT2091XX" was the account number furnished by Vance & Huffman, LLC, an account number assigned by Accelerated

Portfolio, Inc., an account number assigned by CreditFresh, or an account number generated, modified, masked, truncated, encrypted, or otherwise altered by Experian.

169. The collection account was identified in Plaintiff's consumer file using the name "Vance & Huffman LLC" rather than the legal name "Vance and Huffman, LLC." Upon information and belief, the variation in naming further impaired Plaintiff's ability to determine the precise source of the reported information and contributed to confusion concerning the identity of the furnishing entity.

170. Because the account number was incomplete and because the disclosure failed to identify the source and nature of the reported account identifier, Plaintiff could not determine from the consumer file disclosure itself whether the identifier corresponded to an original-creditor account number, a debt-buyer account number, a collection account number, an internal Experian identifier, or some other identifier associated with the reported account.

171. Upon information and belief, Experian maintained, stored, received, possessed, or had access to additional identifying information concerning the collection account beyond the truncated identifier "UT2091XX" that appeared in Plaintiff's April 15, 2026 consumer file disclosure.

172. Upon information and belief, such information included one or more complete account numbers, source identifiers, subscriber identifiers, furnisher-provided account identifiers, original-creditor account identifiers, internal matching data, account-level metadata, or other information used by Experian to associate the collection account with Plaintiff.

173. Despite maintaining, possessing, receiving, or having access to such information, Experian failed to disclose that information to Plaintiff in her April 15, 2026 consumer file disclosure.

174. Upon information and belief, the additional identifying information described above was information maintained in Plaintiff's file, information that might be furnished to users of consumer reports, information used to assemble, match, maintain, disclose, or furnish the collection account, or information underlying the collection account as reported by Experian.

175. Upon information and belief, the additional identifying information described above was necessary to permit Plaintiff to identify, understand, verify, reconcile, and meaningfully dispute the collection account appearing in her file.

176. Experian's failure to disclose that information deprived Plaintiff of information that was necessary to understand the source, identity, and nature of the collection account and impaired Plaintiff's ability to verify or challenge the account before it was furnished to third parties.

177. As a result, Plaintiff was unable to determine from the consumer file disclosure itself the source, nature, origin, and significance of the identifier used to report the collection account and was impaired in her ability to verify, reconcile, understand, and meaningfully dispute the reported information.

178. The Consumer Financial Protection Bureau has advised that a consumer reporting agency must disclose all information in the consumer's file, including information that might be furnished to third parties and information underlying summarized outputs.

179. The purpose of the file-disclosure requirement is to permit consumers to identify, understand, verify, and dispute information maintained concerning them.

180. Experian's disclosure failed to provide sufficient identifying information concerning the collection account to permit Plaintiff to identify, understand, verify, or dispute the account.

181. A consumer file disclosure that identifies a collection account only through an unexplained and incomplete identifier does not permit an ordinary consumer to determine the source of the

account, whether the identifier corresponds to an original-creditor account, a debt-buyer account, a collection account number, or an internal identifier, or whether the account corresponds to any actual obligation.

182. The harm caused by Experian's incomplete disclosure is consistent with known consumer reporting problems recognized by the Consumer Financial Protection Bureau, including consumers first learning of debts after reviewing their consumer reports and then being unable to understand the source of the debt because the report contains limited information.

183. A consumer who first learns of a debt through a consumer file disclosure must be given enough clear and accurate information to determine what account is being reported, who furnished it, who owns it, who originated it, and how the reported identifier relates to any alleged obligation.

184. Experian's disclosure did not provide that information.

185. Metro 2 is the credit reporting industry's standardized format for furnishing consumer credit information to consumer reporting agencies.

186. The 2024 Credit Reporting Resource Guide identifies Metro 2 as an industry standard designed to promote accurate, complete, timely, consistent, and properly mapped consumer credit information.

187. The Metro 2 Format Task Force includes representatives from Experian, Equifax, Innovis, and TransUnion and exists to develop, maintain, and enhance a standardized method for reporting accurate, complete, and timely data.

188. Experian therefore had actual knowledge of Metro 2 standards, debt-buyer reporting standards, collection-agency reporting standards, account-identification standards, original-creditor reporting standards, dispute coding standards, and the need for complete and accurate consumer-identifying information.

189. The Credit Reporting Resource Guide states that debt buyers and third-party collection agencies should not report an account before communicating with the consumer about the debt.

190. The Credit Reporting Resource Guide further instructs debt buyers and third-party collection agencies to report the individual consumer's complete and unique account number as extracted from their file.

191. The Credit Reporting Resource Guide further identifies Account Type Code 0C for debt buyers and Account Type Code 48 for collection agencies and attorneys.

192. The Credit Reporting Resource Guide further identifies Account Status Code 93 as the status code for an account assigned to internal or external collections.

193. The Credit Reporting Resource Guide further requires use of the K1 Segment to report the original credit grantor's name and creditor classification for debt-buyer and collection-agency reporting.

194. The Credit Reporting Resource Guide further provides that Compliance Condition Codes are used for dispute-related reporting, including disputes under the Fair Debt Collection Practices Act and direct disputes under the Fair Credit Reporting Act.

195. Experian's reporting and disclosure of the collection account without sufficient complete account-identifying information, without sufficient source information, and without sufficient explanation of the identifier used deviated from industry-standard credit reporting practices known to Experian. To the extent a consumer-dispute notation was later added, that notation did not cure the incomplete identifier, the inadequate source information, the debt parking, or the materially misleading impression created by the continued reporting of the account.

196. Users of consumer reports, including credit card issuers such as American Express National Bank, reasonably expect collection-account information furnished through the consumer reporting system to be reported in accordance with Metro 2 and the Credit Reporting Resource Guide.

197. A deviation from Metro 2 and Credit Reporting Resource Guide standards can make consumer reporting information materially misleading because users of consumer reports may interpret the reported information as having been furnished, coded, matched, validated, and disclosed according to those industry standards.

198. Because Experian participates in the Metro 2 reporting ecosystem and publicly represents that it assembles and furnishes consumer information for use in credit decisions, users of consumer reports reasonably rely upon Experian to receive, process, maintain, disclose, and furnish collection-account information in a manner consistent with Metro 2 standards and the Credit Reporting Resource Guide.

199. Experian's reporting and disclosure of the collection account under an incomplete identifier, without sufficient source information, and without sufficient original-creditor identifying information created a materially misleading impression likely to affect credit decisions. The later addition of a consumer-dispute notation did not cure the incomplete disclosure, the debt parking, or the materially misleading presentation of the account.

200. Experian furnished a consumer report concerning Plaintiff that contained the parked collection account to American Express National Bank in connection with Plaintiff's application.

201. The date on which the collection account was first furnished to Experian is reflected in records maintained by one or more Defendants.

202. The date of the first communication sent to Plaintiff concerning the alleged debt is reflected in records maintained by Vance and Huffman.

203. The date on which Plaintiff disputed the alleged debt is reflected in records maintained by Vance and Huffman and can be verified through the certified mail records described herein.

204. Records maintained by one or more Defendants reflect whether the collection account was reported with a dispute notation after Plaintiff's dispute.

205. Whether Experian furnished a consumer report containing the collection account to American Express National Bank in connection with Plaintiff's application is reflected in records maintained by Experian and American Express National Bank.

206. Upon information and belief, records maintained by American Express National Bank reflect whether the collection account was received, reviewed, considered, available for consideration, or otherwise utilized during the underwriting process that resulted in the adverse action.

207. The account-number, source-identification, original-creditor, dispute-notation, consumer-report-furnishing, and adverse-action facts alleged herein are recorded in Defendants' own business records.

208. Experian's own records identify what account identifier it received, stored, maintained, matched, disclosed, and furnished concerning the collection account.

209. Experian's own records identify whether it received, stored, maintained, or had access to complete account-identifying information, original-creditor information, source-identifying information, Metro 2 reporting data, dispute-related codes, compliance-condition codes, and subscriber or furnisher identifiers concerning the collection account.

210. American Express National Bank's own records identify whether Plaintiff's consumer report or consumer file was obtained, whether the collection account appeared in that information,

and whether that information was considered, reviewed, used, or available for use in connection with the adverse action.

211. Experian did not follow reasonable procedures to assure the maximum possible accuracy of the information concerning Plaintiff that it reported.

***New York Nexus***

212. The false collection account was furnished into the nationwide consumer reporting system and was transmitted by Experian into New York.

213. Upon information and belief, that information was received and relied upon in New York by creditors maintaining consumer credit operations in New York in connection with the evaluation of Plaintiff's creditworthiness and the adverse action on her application.

***The Collector Defendants Held Themselves Out as Compliance Focused***

214. Vance and Huffman publicly represents that compliance and consumer care are paramount to its company.

215. Vance and Huffman publicly represents that its board and executive team combine over 160 years of experience.

216. Vance and Huffman publicly represents that it is a member of Receivables Management Association International.

217. By reason of those representations, Vance and Huffman was on notice of, and held itself out as adhering to, the requirements governing furnishing and validation, including 12 C.F.R. § 1006.30(a).

## CONCRETE INJURY, STANDING, AND DAMAGES

218. Article III requires a concrete and particularized injury in fact that is actual or imminent, fairly traceable to the challenged conduct, and redressable. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 to 561 (1992); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 to 340 (2016).

219. A bare statutory or procedural violation, divorced from concrete harm, does not by itself establish Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 to 427 (2021).

220. In the Second Circuit, a plaintiff may not rely solely on a statutory violation or an unmaterialized risk of future harm to establish standing. *Maddox v. Bank of New York Mellon Trust Co*., 19 F.4th 58, 64 to 66 (2d Cir. 2021).

221. Reputational harm resulting from the dissemination of materially misleading consumer report information to a third party bears a sufficiently close relationship to the traditional tort of defamation to constitute a concrete injury, as recognized in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 to 434 (2021).

222. Unlike the plaintiffs in Maddox, Plaintiff alleges actual publication of inaccurate or materially misleading consumer report information to third parties, an actual adverse credit decision, loss of a credit opportunity, reputational injury, emotional distress, out-of-pocket losses, lost time, and informational injury tied to concrete downstream consequences.

223. The collection account was materially misleading, incomplete, misleading by omission, and reported in a manner that created a misleading impression regarding the validity, status, dispute history, and reliability of the account because Vance and Huffman and Accelerated Portfolio caused it to be furnished before satisfying the communication prerequisite imposed by 12 C.F.R. § 1006.30(a), before providing the validation information required by 15 U.S.C. § 1692g(a) and 12 C.F.R. § 1006.34, and then allowed it to continue reporting after Plaintiff disputed the alleged debt, even after a consumer-dispute notation was later added.

224. The materially misleading, incomplete, misleading-by-omission, and disputed collection account was published by Experian to American Express National Bank, a third party, when American Express National Bank obtained Plaintiff's consumer report or consumer file in connection with Plaintiff's application for an American Express Platinum Card.

225. American Express National Bank received, reviewed, considered, or had available to it the collection account appearing on Plaintiff's consumer report or consumer file in connection with the underwriting and adverse action process.

226. On June 7, 2026, American Express National Bank declined Plaintiff's application for an American Express Platinum Card.

227. The publication of the collection account to American Express National Bank caused Plaintiff concrete and particularized injury, including denial of credit, loss of a credit opportunity, diminished access to credit, reputational harm, and impairment of Plaintiff's creditworthiness.

228. The publication of the collection account to American Express National Bank caused Plaintiff a concrete and particularized injury because the collection account was received, understood, reviewed, considered, or otherwise available for consideration during the underwriting and adverse-action process and was thereafter followed by the denial of Plaintiff's application.

229. As a direct and proximate result of the adverse action, Plaintiff lost the opportunity to obtain the requested American Express Platinum Card account and the benefits, purchasing power, credit availability, rewards, and financial flexibility associated with that credit product.

230. Plaintiff also suffered diminished access to credit and diminished bargaining power in the consumer credit marketplace while the collection account remained on her consumer file.

231. The collection account communicated derogatory credit information concerning Plaintiff to third parties and conveyed that Plaintiff failed to pay a just debt, which injured Plaintiff's

financial reputation and creditworthiness in a manner closely analogous to the common-law tort of defamation.

232. On or about June 7, 2026, Plaintiff also sought credit through Chase and Citibank and was advised that no offers were available to her.

233. The Chase and Citibank no-offer results are not pleaded as completed credit denials, but they are pleaded as evidence that Plaintiff's consumer file and credit profile were impaired while the collection account was reporting.

234. As a direct and proximate result of the conduct described above, Plaintiff suffered emotional distress, including anxiety, embarrassment, worry about her financial standing, concern over her inability to obtain credit, distress over the denial of credit, and distress from learning that the account had been reported before any contact and continued to report after her dispute.

235. Plaintiff also incurred out-of-pocket costs and expended time addressing Defendants' conduct, including the cost of preparing and mailing the debt parking dispute letter, certified mail fees, postage, time spent reviewing her consumer file, time spent preparing correspondence, time spent attempting to understand and address the derogatory reporting, and time diverted from her ordinary personal affairs.

236. Plaintiff also expended substantial time and effort investigating the source of the derogatory reporting, obtaining and reviewing consumer file disclosures, researching her rights, preparing disputes, communicating with Defendants, preserving evidence, and attempting to mitigate the continuing consequences of the collection account.

237. Plaintiff also experienced pressure to resolve, pay, or address the reported collection account because its appearance on her consumer file created a present impediment to obtaining

credit and financial products, which is the precise coercive effect that debt parking is intended to create.

238. The pressure to resolve the account was not speculative. Plaintiff had a poor FICO Score 8, a new derogatory collection account appearing on her Experian consumer file, repeated communications from Vance and Huffman referencing the reported collection account, and an actual American Express denial shortly thereafter.

239. The debt parking therefore caused both immediate emotional pressure and concrete credit-market consequences.

240. Vance and Huffman's failure to provide the validation information required by 15 U.S.C. § 1692g(a) and 12 C.F.R. § 1006.34 deprived Plaintiff of information to which she was legally entitled.

241. That deprivation caused concrete downstream consequences, including the continued reporting of an unvalidated collection account, Plaintiff's inability to assess the alleged debt before it appeared on her consumer file, Plaintiff's inability to respond meaningfully before the account damaged her credit profile, and Plaintiff's inability to prevent the collection account from being disseminated to American Express National Bank.

242. Plaintiff suffered a separate informational injury because Experian failed to disclose sufficient identifying information concerning the collection account maintained in Plaintiff's file.

243. Because the account identifier was incomplete and because Experian failed to disclose the nature, source, and origin of the reported identifier, Plaintiff could not determine from the consumer file disclosure itself whether the identifier represented an original-creditor account number, a debt-buyer account number, a collection account number, an internal identifier, or some other identifier associated with the reported account.

244. Plaintiff therefore expended additional time and effort investigating information that should have been disclosed in her consumer file disclosure.

245. That informational injury caused concrete downstream consequences, including Plaintiff's inability to verify the account before it was furnished to third parties and Plaintiff's inability to meaningfully challenge the account before American Express National Bank took adverse action.

246. But for Experian's failure to provide a clear, accurate, and complete file disclosure concerning the collection account, Plaintiff would have been better positioned to identify, verify, dispute, and seek correction or suppression of the collection account before it was furnished to American Express National Bank.

247. Experian's incomplete disclosure impaired Plaintiff's ability to correct or challenge the derogatory collection account before it contributed to the denial of credit, loss of credit opportunity, reputational harm, and other damages alleged herein.

248. Plaintiff's injuries are not based on a bare statutory violation alone. They include publication to third parties, adverse action, reputational injury, emotional distress, out-of-pocket loss, lost time, and concrete consequences from deprivation of required validation information.

249. Experian's conduct was likewise not the result of an isolated clerical error.

250. Upon information and belief, Experian maintained, implemented, approved, tolerated, or ratified policies, procedures, systems, programming logic, disclosure templates, Metro 2 ingestion protocols, furnisher-acceptance protocols, dispute-code handling protocols, and consumer file disclosure practices that caused or permitted the violations alleged herein.

251. Experian knew or should have known that Metro 2 and the Credit Reporting Resource Guide require debt-buyer and collection-agency accounts to be reported with complete and unique account-identifying information, proper original-creditor information, proper creditor-

classification information, proper dispute coding when applicable, and sufficient information to permit the account to be accurately matched, understood, verified, and disputed.

252. Experian knew or should have known that debt-buyer and collection-agency reporting before consumer communication was contrary to industry standards and created a heightened risk that the account would be inaccurate, misleading, unverifiable, coercive, or unlawfully parked.

253. Experian knew or should have known that reporting or disclosing a collection account under a truncated, unexplained, or incomplete identifier impaired Plaintiff's ability to determine the source, nature, origin, and significance of the reported account identifier from the consumer file disclosure itself.

254. Experian knew or should have known that a consumer-dispute notation alone does not cure materially misleading reporting where the account remains reported under an incomplete identifier, without sufficient source information, and after having been furnished through debt parking before lawful communication and validation.

255. Experian acted despite actual knowledge of FCRA duties, CFPB guidance, FTC guidance, Metro 2 standards, Credit Reporting Resource Guide standards, prior regulatory scrutiny, prior enforcement activity, consumer complaints, and litigation concerning materially similar consumer reporting practices.

256. Experian's conduct was willful, knowing, reckless, or, at minimum, negligent because the duties violated were clear, repeatedly emphasized by regulators and industry standards, and objectively ascertainable before Experian reported and disclosed the collection account at issue.

257. Long before the events described herein, Experian was the subject of regulatory investigations, enforcement activity, consumer litigation, regulatory guidance, consent orders, and

multistate settlements concerning consumer reporting practices, consumer file disclosures, dispute handling, furnisher oversight, and Fair Credit Reporting Act compliance.

258. On or about May 20, 2015, Experian entered into a multistate Assurance of Voluntary Compliance and Assurance of Voluntary Discontinuance with the Attorneys General of numerous States concerning consumer reporting practices and Fair Credit Reporting Act compliance.

259. As part of that Assurance, Experian agreed to implement, maintain, improve, and monitor procedures relating to maximum possible accuracy, consumer file disclosures, furnisher monitoring, review of supporting documentation, dispute handling, dispute escalation, Metro 2 reporting standards, and related consumer protections.

260. The Assurance placed Experian on actual notice that inaccurate, misleading, incomplete, unverifiable, improperly identified, or inadequately disclosed information in consumer files can cause substantial harm to consumers and can violate the Fair Credit Reporting Act.

261. The conduct alleged herein occurred more than ten years after Experian received that regulatory notice.

262. Experian therefore had more than a decade to evaluate, implement, train upon, audit, monitor, and enforce procedures designed to comply with its Fair Credit Reporting Act obligations concerning maximum possible accuracy, consumer file disclosures, dispute handling, furnisher oversight, and consumer-identifying information.

263. Upon information and belief, the deficiencies alleged herein occurred notwithstanding Experian's prior commitments to improve consumer file disclosures, furnishers' reporting practices, dispute handling procedures, furnisher monitoring, accuracy controls, and consumer-protection safeguards. The continued occurrence of substantially similar deficiencies after years

of regulatory scrutiny supports an inference of reckless disregard for Plaintiff's rights under the Fair Credit Reporting Act.

264. Experian therefore cannot plausibly claim ignorance of its obligations concerning maximum possible accuracy, consumer file disclosures, furnisher monitoring, dispute handling, or related Fair Credit Reporting Act duties.

265. Experian also had notice from public consumer complaint data and regulatory reporting that consumers frequently first learn of alleged collection debts from consumer reports and that limited consumer-report information can prevent consumers from understanding the source and identity of reported debts.

266. Experian therefore knew or should have known that disclosing a collection account using only a truncated, unexplained identifier created a foreseeable risk that consumers would be unable to identify, understand, verify, reconcile, and dispute the account.

267. Experian knew or should have known that collection accounts present a heightened risk of consumer harm because they are inherently derogatory, directly affect creditworthiness determinations, and are frequently relied upon by lenders in making adverse credit decisions.

268. Experian's failure to correct, suppress, clarify, or fully disclose the account despite that known risk supports both negligence and willfulness.

269. Experian's violation was not based on an objectively reasonable interpretation of unsettled law because the statutory text, regulatory guidance, industry standards, and judicial authority made clear that information in a consumer's file, account-identifying information, source-identifying information, and dispute-related information are central to the FCRA's accuracy and disclosure framework.

## FIRST CAUSE OF ACTION

***Violation of the FDCPA, 15 U.S.C. § 1692e***

***(Against Vance and Huffman and Accelerated Portfolio)***

270. Plaintiff repeats and realleges each preceding paragraph of this Complaint as if fully set forth herein.

271. Vance and Huffman and Accelerated Portfolio violated 15 U.S.C. § 1692e(2)(A) by falsely representing the legal status, collectability, and reporting status of the alleged debt through prohibited debt parking, furnishing before lawful communication and validation, and continued reporting after Plaintiff disputed the account, even after the account was later marked as disputed.

272. Vance and Huffman and Accelerated Portfolio violated 15 U.S.C. § 1692e(8) by communicating to a consumer reporting agency credit information that they knew or should have known to be false, namely a collection account furnished before lawful communication and validation, and by allowing the account to continue reporting in a materially misleading manner after Plaintiff disputed it.

273. Vance and Huffman and Accelerated Portfolio violated 15 U.S.C. § 1692e(10) by using false, deceptive, and misleading means in connection with the collection of the alleged debt, including conveying false urgency and using the reported account as leverage to induce payment.

274. As a result of these violations of 15 U.S.C. § 1692e, Plaintiff is entitled to actual damages, statutory damages, costs, and a reasonable attorney's fee under 15 U.S.C. § 1692k.

**SECOND CAUSE OF ACTION**

***Violation of the FDCPA, 15 U.S.C. § 1692f***

***(Against Vance and Huffman and Accelerated Portfolio)***

275. Plaintiff repeats and realleges each preceding paragraph of this Complaint as if fully set forth herein.

276. Vance and Huffman and Accelerated Portfolio violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect the alleged debt, including by parking the collection account on Plaintiff's consumer file in violation of 12 C.F.R. § 1006.30(a) before communicating with Plaintiff and before affording the validation period.

277. Vance and Huffman and Accelerated Portfolio further violated 15 U.S.C. § 1692f by using the reported account as coercive leverage to extract payment.

278. As a result of these violations of 15 U.S.C. § 1692f, Plaintiff is entitled to actual damages, statutory damages, costs, and a reasonable attorney's fee under 15 U.S.C. § 1692k.

279. The conduct of Vance and Huffman and Accelerated Portfolio was willful, knowing, reckless, or, at minimum, negligent.

280. Vance and Huffman and Accelerated Portfolio were on notice of the unlawfulness of debt parking through the Consumer Financial Protection Bureau's promulgation and enforcement of 12 C.F.R. § 1006.30(a), the Federal Trade Commission's debt parking enforcement against Midwest Recovery Systems, and applicable industry guidance.

281. Notwithstanding that notice, Vance and Huffman and Accelerated Portfolio furnished the collection account before communicating with Plaintiff, before providing required validation information, and continued reporting the account after Plaintiff disputed it.

282. The conduct described herein was not the result of an isolated clerical error but rather resulted from collection and furnishing practices implemented, approved, ratified, tolerated, or knowingly permitted by the collector Defendants.

## THIRD CAUSE OF ACTION

***Violation of the FDCPA, 15 U.S.C. § 1692g(a)***

***(Against Vance and Huffman and Accelerated Portfolio)***

283. Plaintiff repeats and realleges each preceding paragraph of this Complaint as if fully set forth herein.

284. Vance and Huffman and Accelerated Portfolio violated 15 U.S.C. § 1692g(a) and 12 C.F.R. § 1006.34 by failing to provide Plaintiff, within five days after the initial communication, the validation information required by law.

285. That required validation information includes the amount of the debt, the name of the creditor to whom the debt was owed, and a statement of Plaintiff's right to dispute the debt and to obtain verification within the thirty-day validation period.

286. As a result of this violation of 15 U.S.C. § 1692g(a), Plaintiff is entitled to actual damages, statutory damages, costs, and a reasonable attorney's fee under 15 U.S.C. § 1692k.

**FOURTH CAUSE OF ACTION**

***Violation of the FDCPA, 15 U.S.C. § 1692c(b)***

***(Against Vance and Huffman and Accelerated Portfolio)***

287. Plaintiff repeats and realleges each preceding paragraph of this Complaint as if fully set forth herein.

288. Vance and Huffman and Accelerated Portfolio violated 15 U.S.C. § 1692c(b) by communicating, in connection with the collection of the alleged debt, with persons other than Plaintiff, without Plaintiff's prior consent and without court authorization, by furnishing the collection account before satisfying the lawful prerequisites to such furnishing. The furnishing was undertaken for the purpose of exerting collection pressure through the consumer reporting system and therefore constituted a communication in connection with the collection of a debt.

289. To the extent Defendants contend that communications to a consumer reporting agency fall within a statutory exception, Plaintiff alleges that such communications were independently

unlawful because they were made in connection with prohibited debt parking and without compliance with governing federal requirements.

290. The exception contained in 15 U.S.C. § 1692c(b) for communications otherwise permitted by law does not extend to communications that themselves violate federal law.

291. At the time Defendants furnished the collection account, federal law prohibited debt collectors from furnishing information concerning a debt to a consumer reporting agency before first communicating with the consumer regarding the debt and waiting a reasonable period of time to respond, as set forth in 12 C.F.R. § 1006.30(a).

292. Because the furnishing alleged herein constituted prohibited debt parking, the communication was not a communication otherwise permitted by law and therefore falls outside any exception contained in 15 U.S.C. § 1692c(b).

293. Permitting a debt collector to invoke the "otherwise permitted by law" exception for a communication that independently violated governing federal debt collection requirements would nullify the debt-parking prohibition and frustrate the remedial purposes of the FDCPA.

294. The consumer reporting agency communication alleged herein was not merely incidental to debt collection but was itself the mechanism through which Defendants exerted collection pressure, damaged Plaintiff's credit profile, and sought to induce payment through the threat of continuing credit harm.

295. As a result of this violation of 15 U.S.C. § 1692c(b), Plaintiff is entitled to actual damages, statutory damages, costs, and a reasonable attorney's fee under 15 U.S.C. § 1692k.

## FIFTH CAUSE OF ACTION

***Violation of New York General Business Law § 349***

***(Deceptive Acts and Practices)***

***(Against Vance and Huffman and Accelerated Portfolio)***

296. Plaintiff repeats and realleges each preceding paragraph of this Complaint as if fully set forth herein.

297. Vance and Huffman and Accelerated Portfolio engaged in acts and practices in the conduct of business that were consumer oriented in nature.

298. Those acts and practices were materially misleading, in that they included reporting a collection account before communicating with the consumer and before validation, creating the misleading impression that the account had been lawfully and properly reported through the consumer reporting system, and using the reported account to coerce payment.

299. As a private plaintiff, Plaintiff asserts only the deceptive prong of New York General Business Law § 349.

300. As a result of these deceptive acts and practices, Plaintiff is entitled to actual damages or fifty dollars, whichever is greater, an increase in the award to up to one thousand dollars upon a finding that the violation was willful or knowing, a reasonable attorney's fee, and injunctive relief, under New York General Business Law § 349(h).

**SIXTH CAUSE OF ACTION**

***Violation of the FCRA, 15 U.S.C. § 1681e(b)***

***(Failure To Assure Maximum Possible Accuracy)***

***(Against Experian)***

301. Plaintiff repeats and realleges each preceding paragraph of this Complaint as if fully set forth herein.

302. Experian is a consumer reporting agency that prepared consumer reports and a consumer file disclosure concerning Plaintiff.

303. Experian furnished a consumer report concerning Plaintiff to American Express National Bank, a third party, in connection with Plaintiff's credit application.

304. Experian violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of the information it reported concerning Plaintiff.

305. Experian's procedures were unreasonable in that Experian reported and furnished a collection account that had been furnished before lawful communication and validation, was materially misleading by omission, and continued to be reported even after Plaintiff disputed the account and a consumer-dispute notation was later added.

306. Upon information and belief, Experian lacked reasonable procedures capable of determining whether the account had been furnished in compliance with applicable federal law governing debt collection reporting and whether the account was required to be reported as disputed after Plaintiff's dispute was received.

307. Upon information and belief, Experian continued reporting the collection account after Plaintiff's dispute. Although a consumer-dispute notation was later added, Experian continued reporting the collection account and failed to delete, suppress, correct, clarify, or otherwise remedy the materially misleading reporting described herein.

308. Upon information and belief, after receiving and processing Plaintiff's dispute, Experian subsequently modified the reporting of the collection account to reflect a consumer-dispute notation. Experian's own conduct therefore demonstrates that the dispute was received, processed, reviewed, and acted upon, yet Experian nevertheless failed to delete, suppress, correct, clarify, or otherwise remedy the materially misleading reporting described herein.

309. The May 19, 2026 Experian disclosure reflected the Vance & Huffman collection account with a balance updated date of May 17, 2026 and a consumer-dispute comment stating "Account information disputed by consumer (Meets requirement of the Fair Credit Reporting Act)."

310. That May 17, 2026 update occurred after Vance and Huffman received Plaintiff's dispute on May 1, 2026, and demonstrates that the account was updated after the dispute but was not deleted, suppressed, corrected, fully explained, or disclosed with a complete account identifier.

311. Experian further failed to maintain and employ reasonable procedures capable of detecting whether the collection account had been furnished before lawful communication with the consumer and before provision of the validation information required by federal law.

312. Plaintiff does not allege that Experian was required to enforce the FDCPA or Regulation F. Rather, Plaintiff alleges that the circumstances surrounding the furnishing created indicia of incompleteness, unreliability, and material misleadingness that reasonable accuracy procedures should have addressed.

313. Reasonable procedures capable of assuring maximum possible accuracy would have included procedures reasonably designed to identify collection accounts furnished before consumer communication, furnished before required validation disclosures, or continuing to report in a materially misleading manner after receipt of a consumer dispute.

314. Experian further failed to maintain and employ reasonable procedures capable of ensuring that disputed collection accounts were not merely marked as disputed, but were also accurately identified, sufficiently sourced, complete, non-misleading, and capable of meaningful verification by the consumer and by users of consumer reports.

315. Experian further failed to follow reasonable procedures to assure maximum possible accuracy because it reported the collection account using an incomplete account identifier and

without sufficient information to permit Plaintiff or users of the report to determine the source, nature, and origin of the reported account identifier.

316. Experian further failed to maintain reasonable procedures designed to ensure that collection accounts were reported in a manner that was complete, clear, understandable, and capable of verification by the consumer.

317. Reporting a collection account under an incomplete identifier without disclosing the source and nature of the identifier created a materially misleading impression concerning the account and impaired Plaintiff's ability to verify or dispute it.

318. Reasonable procedures under 15 U.S.C. § 1681e(b) would have included procedures designed to detect whether a debt-buyer or collection-agency tradeline was furnished before consumer communication, whether it contained a complete and unique account identifier, whether it identified the original creditor through the required original-creditor reporting fields, whether it contained sufficient source-identifying information, whether it used proper collection-account coding, and whether any dispute notation was sufficient to prevent the account from continuing to be reported in a materially misleading manner.

319. Reasonable procedures under 15 U.S.C. § 1681e(b) would also have included procedures designed to reject, suppress, flag, audit, escalate, or require correction of collection-account reporting that lacked complete account-identifying information, omitted required original-creditor information, lacked proper dispute coding, or created a risk that users or consumers would be misled concerning the source, identity, nature, status, or dispute history of the account.

320. Experian's failure to maintain or apply such procedures was especially unreasonable because Experian participates in, receives the benefit of, and has actual knowledge of Metro 2 and Credit Reporting Resource Guide standards governing debt-buyer and collection-agency reporting.

321. Experian's failure to maintain or apply such procedures was also willful because Experian's own industry standards, regulatory guidance, prior regulatory scrutiny, and the CFPB and FTC's public FCRA interpretations made clear that consumer file information, source information, identifying information, and dispute-related information are central to accuracy, completeness, verification, and consumer rights under the FCRA.

322. Experian's procedures were further unreasonable because the foreseeable audience for the report included credit issuers that rely on the consumer reporting system to assess risk and that reasonably expect collection-account information to be complete, properly identified, properly sourced, and not materially misleading.

323. A collection account that is parked before validation, later marked as disputed, and disclosed under an incomplete and unexplained identifier is likely to adversely affect credit decisions because it presents the consumer as having an unresolved derogatory collection obligation without giving the consumer or user adequate information to evaluate the account's source, validity, or disputed status.

324. Upon information and belief, reasonable procedures capable of assuring maximum possible accuracy would have included procedures designed to identify collection accounts reported under incomplete identifiers, procedures designed to ensure that consumers receive sufficient identifying information to understand and verify reported collection accounts, and procedures designed to monitor, review, reject, suppress, correct, or escalate problematic collection reporting practices that create a risk of consumer confusion, inaccuracy, incompleteness, or misleading presentation.

325. Experian's failure to apply such procedures was likely to adversely affect credit decisions because the collection account was derogatory, appeared while Plaintiff's FICO Score 8 was in the

"Poor" range, and was furnished to American Express National Bank before the adverse action on Plaintiff's application.

326. As a result of Experian's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including the denial of credit, reputational harm, and emotional distress.

327. Experian's violation was negligent, entitling Plaintiff to actual damages, costs, and a reasonable attorney's fee under 15 U.S.C. § 1681o.

328. Experian's violation was willful, entitling Plaintiff to actual or statutory damages of $100 to $1,000, punitive damages, costs, and a reasonable attorney's fee under 15 U.S.C. § 1681n.

329. Upon information and belief, Experian's conduct was not the product of a reasonable but mistaken interpretation of the Fair Credit Reporting Act. Rather, Experian acted despite years of regulatory guidance, enforcement actions, advisory opinions, consumer complaints, litigation, consent orders, and settlement agreements addressing the same statutory duties implicated by this action. Experian therefore acted in reckless disregard of obligations that were objectively ascertainable and substantially greater than merely careless conduct.

330. Upon information and belief, the conduct of Experian described herein was not an isolated event affecting only Plaintiff but resulted from policies, procedures, systems, programming logic, disclosure templates, reporting protocols, business practices, or institutional decisions implemented, maintained, approved, tolerated, or ratified by Experian.

331. Upon information and belief, those policies, procedures, systems, disclosure templates, reporting protocols, or business practices affected other consumers in substantially similar ways.

332. The violations alleged herein were therefore foreseeable consequences of systemic practices rather than isolated clerical errors.

333. Experian's conduct was particularly reprehensible because it involved the reporting and disclosure of information concerning a consumer's financial reputation, creditworthiness, and eligibility for credit, matters that Congress recognized as carrying substantial consequences for consumers. Despite years of regulatory scrutiny, regulatory settlements, consent orders, advisory opinions, enforcement actions, and consumer complaints concerning similar conduct, Experian continued to engage in the practices alleged herein.

334. An award of punitive damages is therefore appropriate to punish and deter similar misconduct.

**SEVENTH CAUSE OF ACTION**

***Violation of the FCRA, 15 U.S.C. § 1681g(a)(1)***

***(Failure To Clearly and Accurately Disclose All Information In Plaintiff's File)***

***(Against Experian)***

335. Plaintiff repeats and realleges each preceding paragraph of this Complaint as if fully set forth herein.

336. Plaintiff requested and obtained an Experian consumer file disclosure dated April 15, 2026.

337. Experian maintained information concerning the collection account appearing in Plaintiff's file.

338. Upon information and belief, Experian maintained, received, possessed, stored, or had access to additional identifying information concerning the collection account beyond the truncated identifier disclosed to Plaintiff.

339. Upon information and belief, Experian's omission of additional identifying information from Plaintiff's file disclosure occurred despite longstanding regulatory guidance, including the CFPB's January 2024 Advisory Opinion explaining that a consumer reporting agency must

disclose all information in the consumer's file, including information that may be furnished to third parties and information underlying summarized outputs.

340. Experian's omission also occurred despite industry standards recognizing that complete account-identifying information, original-creditor information, source-identifying information, and properly coded dispute information are essential to accurate, complete, and meaningful consumer reporting.

341. The conduct alleged herein occurred after issuance of the CFPB's January 2024 Advisory Opinion and after Experian had ample opportunity to evaluate, implement, and comply with that guidance concerning consumer file disclosures and disclosure of information maintained in consumer files.

342. Experian disclosed only the identifier "UT2091XX."

343. Experian failed to disclose sufficient identifying information to permit Plaintiff to identify, understand, verify, reconcile, and meaningfully dispute the collection account from the consumer file disclosure itself.

344. Experian failed to disclose whether the identifier originated from Vance and Huffman, Accelerated Portfolio, CreditFresh, or Experian itself.

345. Experian failed to disclose whether the identifier represented a complete account number, a truncated account number, an internal identifier, a collection identifier, or some other identifier.

346. As a result, Plaintiff could not determine from the consumer file disclosure itself whether the reported identifier represented an original-creditor account number, a debt-buyer account number, a collection account number, an internal identifier, or some other identifier associated with the reported account.

347. Experian therefore failed to clearly and accurately disclose all information in Plaintiff's file concerning the collection account, including identifying information necessary to permit Plaintiff to identify, understand, verify, reconcile, and meaningfully dispute that account, as required by 15 U.S.C. § 1681g(a)(1).

348. Experian's omission was material because the missing identifying information was not peripheral or technical. It concerned the identity, source, origin, and account-level meaning of the collection account itself.

349. Without that information, Plaintiff could not determine from the disclosure whether the reported account identifier matched the CreditFresh account, the Accelerated Portfolio account, the Vance and Huffman account, an Experian-generated identifier, or another identifier associated with the reported collection account.

350. Experian's failure to disclose that information frustrated the core purpose of 15 U.S.C. § 1681g(a)(1), which is to enable consumers to review the information maintained about them and dispute inaccurate, incomplete, or misleading information before it causes further harm.

351. Experian's failure to disclose complete and clear identifying information was especially harmful because the FCRA's file-disclosure right works together with the consumer's ability to identify inaccurate or misleading information and seek correction before that information causes downstream harm.

352. Experian's incomplete disclosure deprived Plaintiff of the information necessary to understand whether "UT2091XX" was the same account as the CreditFresh account, the Accelerated Portfolio account, the Vance and Huffman account, an Experian-generated identifier, or another identifier associated with the collection account.

353. Upon information and belief, users of consumer reports receiving information from Experian were provided information concerning the collection account that was more complete than the identifying information disclosed to Plaintiff in her consumer file disclosure.

354. Upon information and belief, Experian maintained additional identifying information concerning the collection account for matching, reporting, furnishing, or dispute-processing purposes but failed to disclose that information to Plaintiff.

355. Plaintiff suffered informational injury, loss of time, frustration, inability to verify the account, inability to meaningfully dispute the account, emotional distress, and other actual damages.

356. Experian's conduct was negligent, entitling Plaintiff to recover actual damages, costs, and attorney's fees pursuant to 15 U.S.C. §1681o.

357. Experian's conduct was willful, entitling Plaintiff to recover actual damages or statutory damages of $100 to $1,000, punitive damages, costs, and attorney's fees pursuant to 15 U.S.C. §1681n.

## EIGHTH CAUSE OF ACTION

***Declaratory Judgment Under 28 U.S.C. § 2201 and CPLR § 3001***

***(Against American Express National Bank)***

***(This Count Is Expressly Not Brought Under the FCRA)***

358. Plaintiff repeats and realleges each preceding paragraph of this Complaint as if fully set forth herein.

359. This count is brought solely and exclusively under the Declaratory Judgment Act, 28 U.S.C. § 2201, and CPLR § 3001.

360. This count is expressly not brought under the Fair Credit Reporting Act.

361. Plaintiff asserts no claim, cause of action, right, duty, or remedy arising under the Fair Credit Reporting Act against American Express National Bank.

362. Plaintiff asserts no claim under 15 U.S.C. § 1681m against American Express National Bank.

363. Plaintiff seeks no damages, statutory penalty, or other monetary relief against American Express National Bank, and invokes only the Court's authority to declare the rights and legal relations of the parties.

364. The controversy is not hypothetical or contingent upon future events because the adverse action has already occurred and Plaintiff's legal rights have already been affected.

365. The existence and causal significance of the collection account directly affects Plaintiff's ability to establish causation, damages, and liability against the remaining Defendants.

366. Resolution of that controversy will materially advance adjudication of the claims asserted in this action and will settle an existing dispute concerning the role that the collection account played in the adverse action process.

367. An actual and justiciable controversy presently exists between Plaintiff and American Express National Bank concerning the legal significance of the adverse action taken against Plaintiff and whether the adverse action was based in whole or in part upon information contained in a consumer report or consumer file that included the collection account described herein.

368. Plaintiff contends that the adverse action was based in whole or in part upon information appearing in a consumer report or consumer file containing the collection account described herein and that such information materially affected Plaintiff's rights and interests.

369. Upon information and belief, American Express National Bank may contend that the adverse action was based upon reasons independent of the collection account or that the collection account did not materially affect the decision.

370. The parties therefore possess adverse legal interests concerning the role and legal significance of the collection account in connection with the adverse action, creating a present controversy of sufficient immediacy and reality to warrant declaratory relief.

371. A declaration concerning those issues will serve a useful purpose in clarifying and settling the legal relations in issue and will terminate uncertainty giving rise to this proceeding.

372. Plaintiff therefore seeks a declaration determining whether the June 7, 2026 adverse action was based in whole or in part upon information contained in a consumer report or consumer file that included the collection account described herein.

373. Plaintiff applied to American Express National Bank for a Platinum Card, and on June 7, 2026 American Express National Bank declined that application, a determination that constitutes adverse action.

374. Upon information and belief, American Express National Bank generated and displayed an electronic adverse decision message contemporaneously with Plaintiff's application informing Plaintiff that the application could not be approved and that a written explanation of the reasons for the decision would be provided separately.

375. Upon information and belief, American Express National Bank took that adverse action based in whole or in part on information contained in Plaintiff's consumer report or consumer file, which contained the parked collection account.

376. Upon information and belief, American Express National Bank possesses records identifying the consumer reporting agency or agencies from which it obtained information

concerning Plaintiff, the information considered during the underwriting process, and the reasons for the adverse action taken on Plaintiff's application.

377. Plaintiff contends that the adverse action was caused in whole or in part by the collection account furnished by Vance and Huffman, reported by Experian, and appearing on Plaintiff's consumer file.

378. Upon information and belief, American Express National Bank disputes, or may dispute, Plaintiff's contention concerning the role that the collection account played in the adverse action.

379. The role, materiality, and causal significance of the collection account in connection with the adverse action present a real, immediate, and concrete controversy affecting Plaintiff's legal rights and interests because the adverse action has already occurred and continues to affect Plaintiff's ability to obtain credit.

380. A judicial declaration concerning the causal relationship between the collection account and the adverse action will terminate uncertainty and controversy concerning the parties' legal relations and will materially advance resolution of Plaintiff's claims against the remaining Defendants.

381. An actual and justiciable controversy of sufficient immediacy and reality exists between Plaintiff and American Express National Bank concerning whether the adverse action on Plaintiff's application was caused in whole or in part by Plaintiff's consumer report or consumer file.

382. Plaintiff is entitled to a judgment declaring the rights and legal relations of Plaintiff and American Express National Bank with respect to each of the foregoing questions, pursuant to 28 U.S.C. § 2201 and CPLR § 3001.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment and orders granting the following relief:

A. On the First through Fourth Causes of Action, actual damages, statutory damages of up to $1,000, costs, and a reasonable attorney's fee under 15 U.S.C. § 1692k, against Vance and Huffman and Accelerated Portfolio;

B. On the Fifth Cause of Action, actual damages or fifty dollars, whichever is greater, an increase to up to $1,000 for a willful or knowing violation, injunctive relief, costs, and a reasonable attorney's fee under New York General Business Law § 349(h), against Vance and Huffman and Accelerated Portfolio;

C. On the Sixth Cause of Action, actual damages, statutory damages of $100 to $1,000, punitive damages, costs, and a reasonable attorney's fee under 15 U.S.C. §§ 1681n and 1681o, against Experian;

D. On the Seventh Cause of Action for violation of 15 U.S.C. §1681g(a)(1), actual damages, statutory damages of $100 to $1,000, punitive damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. §§1681n and 1681o, against Experian;

E. On the Eighth Cause of Action, a judgment under 28 U.S.C. § 2201 and CPLR § 3001, and expressly not under the Fair Credit Reporting Act, declaring the rights and legal relations of Plaintiff and American Express National Bank concerning whether the June 7, 2026 adverse action was based in whole or in part upon information appearing in a consumer report or consumer file containing the collection account described herein;

F. A declaration that the conduct of Vance and Huffman and Accelerated Portfolio violated the FDCPA, Regulation F, and New York General Business Law § 349;

G. A determination that Plaintiff has not elected arbitration and that the arbitrable claims shall proceed in this Court unless and until a party entitled to invoke the Arbitration Agreement timely and properly seeks arbitration;

H. In the event a party entitled to invoke the Arbitration Agreement timely and properly elects arbitration and has not waived that right through litigation conduct inconsistent with arbitration, an order staying the arbitrable claims and compelling arbitration pursuant to 9 U.S.C. §§ 3 and 4 and CPLR 7503(a), while the non-arbitrable claims against Experian and American Express National Bank remain before this Court;

I. Pre-judgment and post-judgment interest as allowed by law; and

J. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable in the event this action proceeds in this Court.

Dated: New York, New York
June 9, 2026

THE LAW OFFICE OF
ELLIOT M. ELO, ESQ. PLLC
By: s/ Elliot M. Elo
Elliot M. Elo, Esq.
42 West 48th Street, Floor 2
New York, New York 10036-1701
Telephone: (212) 302-1257
Facsimile: (212) 302-1648
Email: elliot@elolawfirm.com
*Attorney for Plaintiff*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

------------------------------------------------------------------------

KAREN GEORGINA FOSTER, a/k/a KAREN MARTINEZ, Index No. _______________

Plaintiff,

**VERIFICATION**

-against-

VANCE AND HUFFMAN, LLC, ACCELERATED PORTFOLIO, INC., EXPERIAN INFORMATION SOLUTIONS, INC., and AMERICAN EXPRESS NATIONAL BANK,

Defendants.

------------------------------------------------------------------------

I, Karen Georgina Foster, am the Plaintiff in the above-entitled action, and I have read the foregoing Verified Complaint and know the contents thereof.

I affirm this 9th day of June, 2026, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, except as to matters alleged on information and belief and as to those matters I believe it to be true, and I understand that this document may be filed in an action or proceeding in a court of law.

[signature]
KAREN GEORGINA FOSTER

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

KAREN GEORGINA FOSTER, a/k/a KAREN MARTINEZ,

Index No. _______________

Plaintiff,

-against-

VANCE & HUFFMAN, LLC, ACCELERATED PORTFOLIO, INC., EXPERIAN INFORMATION SOLUTIONS, INC., and AMERICAN EXPRESS NATIONAL BANK,

Defendants.

---

**NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING**

**PLEASE TAKE NOTICE** that the matter captioned above, which has been commenced by filing of the accompanying documents with the County Clerk, is subject to mandatory electronic filing pursuant to Section 202.5-bb of the Uniform Rules for the Trial Courts. This notice is being served as required by Subdivision (b)(3) of that Section.

The New York State Courts Electronic Filing System ("NYSCEF") is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and self-represented parties. Counsel and/or parties who do not notify the court of a claimed exemption (see below) as required by Section 202.5-bb(e) must immediately record their representation within the e-filed matter on the Consent page in NYSCEF. Failure to do so may result in an inability to receive electronic notice of document filings.

Exemptions from mandatory electronic filing are limited to: (1) attorneys who certify in good faith that they lack the computer equipment and, along with all employees, the requisite knowledge to comply; and (2) self-represented parties who choose not to participate in electronic filing.

For additional information about electronic filing, including access to Section 202.5-bb, consult the NYSCEF website at **www.nycourts.gov/efile** or contact the NYSCEF Resource Center at 646-386-3033 or **efile@nycourts.gov**.

Dated: New York, New York
June 9, 2026

THE LAW OFFICE OF
ELLIOT M. ELO, ESQ. PLLC
By:s/ Elliot M. Elo
Elliot M. Elo, Esq.
42 West 48th Street, Floor 2
New York, New York 10036-1701
Telephone: (212) 302-1257
Facsimile: (212) 302-1648
Email: elliot@elolawfirm.com
*Attorney for Plaintiff*

**TO:**

**Vance & Huffman, LLC**
c/o Secretary of State of the State of New York, as agent, and
55 Monette Pkwy, Suite 100, Smithfield, Virginia 23430

**Accelerated Portfolio, Inc.**
c/o Secretary of State of the State of New York, as agent, and
39 Monette Parkway, Smithfield, Virginia 23430

**Experian Information Solutions, Inc.**
c/o C T Corporation System, registered agent
28 Liberty Street, New York, New York 10005

**American Express National Bank**
115 West Towne Ridge Parkway, Sandy, Utah 84070

ATTORNEY(S) :
INDEX # : 157274/2026
PURCHASED/FILED : June 9, 2026
STATE OF : NEW YORK
COURT : Supreme
COUNTY/DISTRICT : New York

# AFFIRMATION OF SERVICE - SECRETARY OF STATE

KAREN GEORGINA FOSTER, a/k/a KAREN MARTINEZ

Plaintiff(s)

against

VANCE & HUFFMAN, LLC ETAL

Defendant(s)

STATE OF NEW YORK )
COUNTY OF ALBANY ) SS
CITY OF ALBANY )

**DESCRIPTION OF PERSON SERVED:** Approx. Age: 30 Yrs

Weight: 190 Lbs Height: 6'0" Gender: Male Race: White

Hair color: Brown Other:

**Robert Guyette**, being duly sworn, deposes and says: deponent is over the age of eighteen (18) years; is not a party to this action, and resides in the State of NY, and that on **June 16, 2026**, at **3:25 PM**, at the office of the Secretary of State of the State of NY, located at 99 Washington Ave, 6th Fl, Albany, New York 12231 deponent served:

**NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING, SUMMONS AND VERIFIED COMPLAINT**

on

**VANCE AND HUFFMAN, LLC SUED HEREIN AS VANCE & HUFFMAN, LLC**,

the Defendant in this action, by delivering to and leaving with **Bryan Millner** AUTHORIZED AGENT in the Office of the Secretary of State, of the State of New York, personally at the Office of the Secretary of State of the State of New York, two (2) true copies thereof and that at the time of making such service, deponent paid said Secretary of State a fee of $40 dollars; That said service was made pursuant to Section **LIMITED LIABILITY COMPANY LAW §303**.

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office of the Secretary of State of the State of New York, duly authorized to accept such service on behalf of said defendant.

I affirm this **JUNE 16, 2026**, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, except as to matters alleged on information and belief and as to those matters I believe it to be true, and I understand that this document may be filed in an action or proceeding in a court of law.

X ______________________
ROBERT GUYETTE

**Invoice•Work Order #** 2625377
Attorney File # **foster**

ATTORNEY(S) :
INDEX # : 157274/2026
PURCHASED/FILED : June 9, 2026
STATE OF : NEW YORK
COURT : Supreme
COUNTY/DISTRICT : New York

# AFFIRMATION OF SERVICE - SECRETARY OF STATE

KAREN GEORGINA FOSTER, a/k/a KAREN MARTINEZ

Plaintiff(s)

against

VANCE & HUFFMAN, LLC ETAL

Defendant(s)

STATE OF NEW YORK )
COUNTY OF ALBANY ) SS
CITY OF ALBANY )

**DESCRIPTION OF PERSON SERVED:** Approx. Age: 30 Yrs

Weight: 190 Lbs Height: 6'0" Gender: Male Race: White

Hair color: Brown Other:

**Robert Guyette**, being duly sworn, deposes and says: deponent is over the age of eighteen (18) years; is not a party to this action, and resides in the State of NY, and that on **June 16, 2026**, at **3:25 PM**, at the office of the Secretary of State of the State of NY, located at 99 Washington Ave, 6th Fl, Albany, New York 12231 deponent served:

**NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING, SUMMONS AND VERIFIED COMPLAINT**

on

**ACCELERATED PORTFOLIO, INC.**,

the Defendant in this action, by delivering to and leaving with **Bryan Millner** AUTHORIZED AGENT in the Office of the Secretary of State, of the State of New York, personally at the Office of the Secretary of State of the State of New York, two (2) true copies thereof and that at the time of making such service, deponent paid said Secretary of State a fee of $40 dollars; That said service was made pursuant to Section **BUSINESS CORPORATION LAW §306**.

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office of the Secretary of State of the State of New York, duly authorized to accept such service on behalf of said defendant.

I affirm this **JUNE 16, 2026**, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, except as to matters alleged on information and belief and as to those matters I believe it to be true, and I understand that this document may be filed in an action or proceeding in a court of law.

X ____________________
ROBERT GUYETTE

**Invoice·Work Order #** 2625382
Attorney File # **foster**

**ATTORNEY(S) :**
**INDEX # : 157274/2026**
**PURCHASED/FILED :** June 9, 2026
**STATE OF : NEW YORK**
**COURT :** Supreme
**COUNTY/DISTRICT :** New York

## AFFIRMATION OF SERVICE - SECRETARY OF STATE

KAREN GEORGINA FOSTER, a/k/a KAREN MARTINEZ

Plaintiff(s)

against

VANCE & HUFFMAN, LLC ETAL

Defendant(s)

STATE OF NEW YORK )
COUNTY OF ALBANY ) SS
CITY OF ALBANY )

**DESCRIPTION OF PERSON SERVED:** Approx. Age: 30 Yrs

Weight: 190 Lbs Height: 6'0" Gender: Male Race: White

Hair color: Brown Other: ____

**Robert Guyette**, being duly sworn, deposes and says: deponent is over the age of eighteen (18) years; is not a party to this action, and resides in the State of NY, and that on **June 16, 2026**, at **3:25 PM**, at the office of the Secretary of State of the State of NY, located at 99 Washington Ave, 6th Fl, Albany, New York 12231 deponent served:

**NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING, SUMMONS AND VERIFIED COMPLAINT**

on

**EXPERIAN INFORMATION SOLUTIONS, INC.**,

the Defendant in this action, by delivering to and leaving with **Bryan Millner** AUTHORIZED AGENT in the Office of the Secretary of State, of the State of New York, personally at the Office of the Secretary of State of the State of New York, two (2) true copies thereof and that at the time of making such service, deponent paid said Secretary of State a fee of $40 dollars; That said service was made pursuant to Section **BUSINESS CORPORATION LAW §306**.

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office of the Secretary of State of the State of New York, duly authorized to accept such service on behalf of said defendant.

I affirm this **JUNE 16, 2026**, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, except as to matters alleged on information and belief and as to those matters I believe it to be true, and I understand that this document may be filed in an action or proceeding in a court of law.

X ____________________
ROBERT GUYETTE

**Invoice·Work Order #** 2625383
Attorney File # **foster**